UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CLAIRE O. O'MALLEY,

      Plaintiff,

v.                                          Case No. SA-19-CV-0010-JKP

BROWN BROTHERS
HARRIMAN & CO.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim* (ECF No. 14). Plaintiff has filed a response in opposition, *see* ECF No. 16, and Defendant has filed a reply brief, *see* ECF No. 18. In her response, Plaintiff includes a *Motion to Convert Under Fed. R. Civ. P. 12(d)* and a *Motion to Strike* evidence presented with the motion to dismiss. All motions are ripe for ruling. For the reasons that follow, the Court partially grants the motion to dismiss, otherwise denies that motion, and entirely denies the motion to convert and the motion to strike.

## I. BACKGROUND

On January 4, 2019, Plaintiff commenced this civil action under diversity jurisdiction, 28 U.S.C. § 1332(a), and asserted the following three state law claims against her investment advisor, Brown Brothers Harriman & Co. ("BBH"): (1) breach of fiduciary duty, (2) negligence, and (3) gross negligence. *See* Compl. (ECF No. 1) ¶¶ 4, 20-25. These claims arise from alleged acts and omissions of BBH following the transfer of a Vanguard Municipal Bond Fund ("Vanguard Fund" or "the fund") purchased in 1992 for $529,478.50 and transferred to BBH in 1996. *See* id. ¶¶ 7-19. She sought actual and exemplary damages. *Id*. at 7.

Pursuant to Fed. R. Civ. P. 12(b)(6), BBH moves to dismiss the complaint on grounds that the applicable statutes of limitations and a contractual exculpatory clause bar all claims, and the gross negligence claim fails because Plaintiff has not pled essential elements. *See generally* Mot. Dismiss. To support its exculpatory clause defense, BBH attaches a "true and correct copy of the investment advisory agreement" between the parties. *See* Ex. A (attached to motion). It contends that the Court may review the attachment without converting the motion to one for summary judgment because Plaintiff references the parties' agreement in her complaint, and it is central to her claims. Mot. Dismiss at 4.

Two weeks later, Plaintiff filed a First Amended Complaint (ECF No. 15) and her response to the motion, which relies on the amended pleading, and includes a motion to convert and a motion to strike. She submits that her claims are timely because BBH remains her agent and fiduciary with respect to the Vanguard Fund and through well-established exceptions to the Texas statute of limitations – the discovery rule and the continuing tort doctrine. Resp. at 3-13. She also maintains that she has pled enough facts in her amended complaint to support her gross negligence claim. *Id.* at 13-15. With respect to the exculpatory clause defense, she invokes Fed. R. Civ. P. 12(d) to move to convert the motion to dismiss to one for summary judgment; objects to and moves to strike Exhibit A; argues that, even if not struck, the exhibit does not entitle BBH to summary judgment; and also urges the Court to disregard the exhibit as extrinsic evidence not properly considered on a motion to dismiss. *Id.* at 15-19.

In reply, BBH requests that the Court consider its motion as a challenge to the First Amended Complaint. *See* Reply at 1 n.2. It argues that the asserted exceptions to the statutes of limitations are inapplicable, the amended complaint does not correct the pleading deficiencies regarding the gross negligence claim, and the exculpatory clause bars the claims. *See generally*

2

*id.* It further argues that the Court may disregard Plaintiff's allegations that BBH remains her agent and fiduciary after the investor-advisor relationship ended. *Id.* at 4. Further, with respect to Plaintiff's concerns about Exhibit A, BBH expressly argues that the Court may consider the exhibit within the context of Fed. R. Civ. P. 12(b)(6) for the reasons stated in its motion. *See id.* at 10-11. But to the extent the Court disagrees, BBH requests that the Court decline to consider the agreement and defer ruling on that part of its motion rather than converting the motion to one for summary judgment. *Id.* at 11 n.15.

At the prompting of the Court, *see* ECF No. 27, Plaintiff moved for leave to file a Second Amended Complaint (ECF No. 30) to address a jurisdictional defect related to the citizenship of Defendant. *See* Pl.'s Unopposed Mot. Leave File Second Am. Compl. (ECF No. 29). When granting that motion, the Court recognized that the proposed amended complaint would not moot the pending motion to dismiss because the amendment only addressed the Court's jurisdictional concerns. *See* Text Order Granting Mot. for Leave. No one has suggested that this amendment renders the motion to dismiss moot. Adding the requested jurisdictional facts does not alter the asserted bases for dismissal. The Court will treat the motion to dismiss as being asserted against the most recent complaint.

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, the Court must "apply Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Accrual

of a claim or cause of action is also governed by state law. *See Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (per curiam) (applying Texas law on accrual in diversity case).

Although "federal law, rather than state law, invariably governs procedural matters in federal courts," *Camacho v. Tex, Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006), classifying "law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor," G*asperini*, 518 U.S. at 427. But when a matter is "covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic," because "if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Id.* at 427 n.7 (citing *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965); *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987)).

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the Texas Supreme Court that "'precisely' resolves the legal issue, federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

### III. MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). But when a pleading references documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "A document is central to a claim when it is 'necessary to establish an element' of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)). However, "if the operative pleading references a document that 'is merely evidence of an element' of a claim, the courts do not incorporate it into the pleading." *Id.* (same).

BBH has attached an agreement between the parties to its motion to dismiss. Such attachment prompts "an obvious threshold question that often arises" in the context of a motion to dismiss, i.e., whether the attachment constitutes a matter "outside the pleadings" for purposes of Fed. R. Civ. P. 12(d). *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007). Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

If the Court concludes that the attachment is a matter outside the pleadings and does not exclude it, Rule 12(d) mandates that the Court treat the motion to dismiss as one for summary judgment. But the decision to accept or reject a proffered matter outside the pleadings is within the court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193-94 & n.3 (5th Cir. 1988).

As an initial matter, the Court notes that nowhere in any complaint filed in this action does Plaintiff refer to the agreement attached to the motion to dismiss. BBH essentially concedes this point by arguing that Plaintiff "implicitly references the Agreement by relying on the investment advisor relationship and the duties emanating from it." *See* Reply at 11. Contrary to BBH's argument, an implicit reference appears insufficient to allow the Court to consider the attached exhibit without converting the motion to dismiss to a motion for summary judgment. Since the Fifth Circuit initially approved the practice of considering matters attached to a motion to dismiss in *Collins*, Fifth Circuit precedent clearly, unambiguously, and unyieldingly requires a reference to the document within the pleading. *See*, *e.g.*, *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766-67 (5th Cir. 2016); *Taylor v. City of Shreveport*, 798 F.3d 276, 279 & n.4 (5th Cir. 2015); *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins*, 224 F.3d at 498-99.

Nothing suggests that an implicit reference is sufficient. And the argument for accepting an implicit reference essentially rewrites the circumstances where courts may permissibly con-

sider an attachment to a motion to dismiss without converting the motion to one for summary judgment. Accepting an implicit reference as sufficient effectively eliminates the reference requirement thus leaving only the requirement that the document be central to a claim. This Court will not extend *Collins* and its progeny to implicit references to documents.

Furthermore, based on Plaintiff's allegations, it does not appear that she necessarily premises any claim on the document BBH attaches to its motion. While the attached agreement may ultimately prove to be the basis for one or more of her claims, making such a finding at this point exceeds the scope of a motion to dismiss. Given the allegations of Plaintiff and the briefing, the document attached by BBH appears more central to its defenses than to any claim of Plaintiff. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) ("Although the plaintiffs rely on the Final Report in their complaints, certainly the report alone is not central to their claims. Indeed, it is much more central to the University Officials' defenses.").

In this case, an additional factor also supports not considering the attached exhibit. Plaintiff has questioned the veracity or completeness of the document and objected to its consideration unless the Court converts the motion to one for summary judgment. In *Scanlan*, the Fifth Circuit highlighted that an absence of an objection to the "court's consideration of those documents was central to [the Fifth Circuit's] approval of that practice." 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99). More recently in a related context (considering documents referenced in the complaint and attached to a response to the motion to dismiss), the Fifth Circuit again noted an absence of any question as to the authenticity of the relied-upon documents. *See Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008).

For all these reasons, the Court can only consider the submitted exhibit in the context of summary judgment. But even BBH does not want to convert the motion to one for summary

7

judgment. Given Plaintiff's concerns about the exhibit and BBH's opposition to the summary judgment conversion, the Court exercises its discretion to exclude the exhibit from its consideration. Because it declines to consider the exhibit, the Court cannot consider whether the contractual exculpatory clause bars any claim. It thus denies the motion to dismiss to that extent. It also denies the motion to convert and motion to strike included with Plaintiff's response to the motion to dismiss.

Moving past the submitted exhibit, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). And "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."[1] *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted un-

---

[1]Plaintiff relies on *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and other cases predating *Iqbal* and *Twombly* to argue that courts "may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Resp. at 2 (citation and internal quotation marks omitted). However, *Twombly* stepped away from that language used in *Conley*. *See* 550 U.S. at 563 ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

lawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

Furthermore, when it "is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like," a defendant may rely on a statute of limitations defense to support dismissal under Rule 12(b)(6). *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). In general, "the limitations period runs from the moment a plaintiff's claim 'accrues.'" *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015); *accord United States v. Luminant Generation Co., L.L.C.*, 905 F.3d 874, 880 (5th Cir. 2018), *reh'g en banc granted*, 929 F.3d 316 (5th Cir. 2019). And, under Texas law, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Therefore, "a cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Texas courts often refer to this as the "legal injury rule." *See*, *e.g.*, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

A. **Statute of Limitations**

Plaintiff asserts three claims (breach of fiduciary duty, negligence, and gross negligence). Subject to exceptions not applicable here, a two-year statute of limitations applies to her negli-

gence claims and a four-year limitations period applies to the breach of fiduciary duty. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.003(a) (personal injury, negligence), 16.004(a)(5) (breach of fiduciary duty). Therefore, all claims are time barred if they accrued before January 4, 2015, four years prior to the date Plaintiff filed her original complaint in this case. As previously mentioned, Plaintiff argues that her claims are timely due to (1) an ongoing agency or fiduciary relationship between her and BBH and (2) two invoked exceptions to the Texas statute of limitations – the discovery rule and the continuing tort doctrine. Resp. at 3-13.

Based upon allegations within the Second Amended Complaint, Plaintiff obtained the Vanguard Fund in 1992; decided to transfer that fund and others to BBH in January 1996; the fund and others were delivered to BBH in May 1996; Vanguard corrected an erroneous address for BBH on October 11, 2003; Plaintiff received information in September 2017 that prompted her to inquire about the management of her Vanguard Fund; and Vanguard changed the address for the fund from BBH to Plaintiff in 2018 but still identified BBH as the custodian of the Vanguard Fund. *See* Second Am. Compl. ¶¶ 8-19. In addition, the market value of the Vanguard Fund varied from $529,478.50 in 1992; to $535,461.31 in March 1996, and now it "is valued at over $1,000,000." *Id*. ¶¶ 4, 8, 12.

Plaintiff alleges that BBH breached its fiduciary duty "by not properly custodying and managing the Vanguard Fund, or alternatively for not sending [her] the Vanguard Fund statements, or alternatively for not advising her that it was not managing or handling said investment even though it was regularly receiving the Vanguard Fund account statements." *Id*. ¶ 20. She further alleges that BBH "failed to inform, or alternatively fully inform, [her] of the circumstances concerning the Vanguard Fund account" and that "BBH did not and has not advised [her] of the best course of action concerning the Vanguard Fund, it has sent her no correspondence concern-

ing the Vanguard Fund, it has done nothing that would be expected of an investment advisor to assist her with the Vanguard Fund." *Id*. She also alleges that BBH is her "current fiduciary and present agent for the Vanguard Fund," *id*. ¶ 21, which is consistent with an earlier allegation that, "BBH's breaches and negligence are ongoing and continuous," because "BBH is still custodian of the asset, and through the date of this pleading, still fails to manage or inform [her]," *id*. ¶ 17. However, Plaintiff introduces her case by stating that this action is "against her former investment advisor." *See id.* ¶ 1.

Nevertheless, although Plaintiff indicates that BBH is no longer her investment advisor, it allegedly remains custodian of the Vanguard Fund and her fiduciary and agent for that fund. And Plaintiff alleges that, the following acts or omissions occurring while BBH acted as her fiduciary, breached duties owed to her: (a) failure to disclose the continued existence of the fund; (b) refusal/failure to properly account for transactions involving the transfer of her assets to BBH; (c) refusal/failure to act honestly, loyally, and with complete candor; (d) failure to make full disclosure regarding information subject to its fiduciary and agency duties; (e) wasting her funds; (f) taking harmful action toward her; (g) failure to send her information and details about her Vanguard Fund investment; and (h) depriving her of the full return on her investments. *See id.* ¶ 22. Plaintiff relies on those same acts and omissions for her claims of negligence and gross negligence. *See id.* ¶ 25.

Although it is unclear how the investor-advisor relationship ended while leaving an agency or fiduciary relationship, the Court will not ignore factual allegations and cannot go outside the pleadings for potential clarification. While it appears that the basis for Plaintiff's claims may have commenced soon after the transfer of the Vanguard Fund to BBH in 1996, the operative pleading is not limited to that time period alone. Plaintiff does not allege specific dates for the

11

alleged breaches and negligence. It instead appears from the face of the operative pleading that the alleged breaches and negligence may have commenced long ago but have continued through the date of the pleading. On the current allegations, the Court cannot say that it is evident that Plaintiff's claims are barred by the statute of limitations. Even though the parties make extensive arguments regarding the discovery rule and the continuing tort doctrine, the Court has no need to consider their applicability on the present motion.

**B. <u>Gross Negligence</u>**

BBH also argues that Plaintiff fails to allege enough facts to state a claim of gross negligence. Under Texas law, negligence has three elements: "existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Rodriguez–Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (quoting *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). Texas does not recognize gross negligence as "a separate cause of action apart from negligence." *RLI Ins. Co. v. Union Pac. R. Co.*, 463 F. Supp. 2d 646, 649-50 (S.D. Tex. 2006) (citing *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 557 (Tex. App – Amarillo 1997, writ denied)). Instead, "the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *Id*. (citing *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 641 (E.D. Tex. 1997)); *accord* Tex. Civ. Prac. & Rem. Code § 41.003(a)(3) (listing gross negligence as one of three avenues to obtain exemplary damages). [2]

"Gross negligence consists of both objective and subjective elements." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Under Texas law,

---

[2]Because the Court has excluded the purported agreement between the parties which contains an exculpatory clause that could apply "in the absence of willful misconduct or gross negligence," this section does not address gross negligence in that context.

"Gross negligence" means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11). To be entitled to exemplary damages based on gross negligence, a plaintiff must prove both of these elements. *U-Haul Int'l, Inc.*, 380 S.W.3d at 137. Of course, when addressing a motion to dismiss, the Court merely examines the operative pleading for sufficient factual allegations to support the challenged claim.

The subjective component requires "actual subjective knowledge of an extreme risk of serious harm." *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc.*, 380 S.W.3d 118. "The magnitude of the risk is judged from the viewpoint of the defendant at the time the events occurred." *IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 897 (Tex. App. – Houston [1st Dist.] 2003, pet. denied). Additionally, the extreme-risk element requires a "likelihood of serious injury to the plaintiff," not merely "a remote possibility of injury or even a high probability of minor harm." *Carlton v. Freer Inv. Grp.*, Ltd., No. 5:15-CV-946-DAE, 2017 WL 11046201, at *8 (W.D. Tex. Aug. 8, 2017) (quoting *Mobile Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). And the subjective element requires that "the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id*. (same). "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Moriel*, 879 S.W.2d at 22.

One court has noted that, under Texas law, "[g]ross negligence is a condition of a person's mind that may be alleged generally under [Fed. R. Civ. P.] 9(b) and provides sufficient justification for an award of exemplary damages if proved by clear and convincing evidence." *GE*

13

*Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954, at *11 (N.D. Tex. Dec. 31, 2009). While Rule 9(b) imposes heightened pleading requirements for allegations of fraud and mistake, "other conditions of a person's mind may be alleged generally." Of course, this does not mean that a plaintiff may rely on conclusory allegations of a condition of a person's mind. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154 (5th Cir. 2010). Even when utilizing general allegations permitted under Rule 9(b), plaintiffs "must set forth specific facts that support an inference" of the required mental state. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

Although the second sentence of Rule 9(b) "excuses a party from pleading [other conditions of a person's mind] under an elevated pleading standard . . . [i]t does not give [the party] license to evade the less rigid—though still operative—strictures of Rule 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). Furthermore, "Rule 8 does not empower [a party] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687.

In any event, when a defendant's mental state "is not apparent, a plaintiff may adequately plead [the required mental state] by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Tuchman*, 14 F.3d at 1068. However, when "the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, [pleadings subject to Rule 9(b)] may be based on information and belief." *Id*. Even so, basing a claim on information and belief does not permit reliance "on speculation and conclusory allegations." *Id*.

Two years ago, the Fifth Circuit emphasized "that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to

provide that information in her complaint." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015)). And it cited with approval, a Second Circuit opinion stating that

> "[t]he *Twombly* plausibility standard, which applies to all civil actions, . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible . . . ."

*Id*. (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted)). Thus, "[a]fter *Iqbal* and *Twombly*, pleading 'upon information and belief' remains permissible so long as the allegations in the pleading raise a facially plausible claim." *Barnett v. Patwardhan*, No. CIV.A. 12-1576, 2013 WL 1290201, at *2 (W.D. La. Mar. 28, 2013).

In conclusory fashion, Plaintiff states that the "acts and omissions of BBH constituted willful misconduct and gross negligence and were not merely thoughtless, careless or ineffective." Second Am. Compl. ¶ 27. To support such conclusion, she alleges that (1) BBH agreed to serve as fiduciary and manage her assets; (2) her previous investment advisor notified BBH twice that her assets included the Vanguard Fund; (3) BBH had actual knowledge of the fund; (4) her prior advisor confirmed it was no longer managing the fund and that it had been transferred to BBH; (5) at the time of transfer the fund's value exceeded half a million dollars; (6) Vanguard sent statements to BBH for twenty years but BBH never took any action to manage the fund or notify her that it was not managing the fund. *Id*. Plaintiff thus concludes that, "[w]hen viewed objectively from BBH's standpoint, BBH's acts and omission deviated from the ordinary standard of care to such an extent that BBH created an extreme degree of risk of causing serious harm." *Id*. She further concludes that the actions of BBH "created a high probability of serious financial harm to its client." *Id*. With respect to the subjective component of gross negligence,

15

Plaintiff concludes that "[a]n investment advisor that, for decades, ignores yearly statements concerning its client's high-value asset acts with conscious indifference to the rights, safety and welfare of that client." *Id*. ¶ 28.

Other than a brief mention of "information and belief" regarding a change of BBH's address in 2003, *see* Second Am. Compl. ¶ 16, Plaintiff does not state that her allegations are based upon information and belief. Nevertheless, when "allegations in the complaint are not based upon [a plaintiff's] personal knowledge," they are "necessarily pleaded on 'information and belief,' although not labeled as such." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 351 (5th Cir. 2002). Given that principle, the Court views Plaintiff's allegations regarding Defendant's state of mind as based on information and belief. Likewise, the allegations regarding financial harm may be based on information and belief rather than her own personal knowledge.

For the most part, the Court views Plaintiff's allegations as no more than factually unsupported legal conclusions and mere recitation of the elements of gross negligence. By their very nature, investments typically involve some risk. Furthermore, investment strategies, much like football strategies, are often subject to Monday-morning quarterbacking. Plaintiff's allegations clearly reflect inaction on the part of BBH for a lengthy time. But the Court cannot reasonably infer from such inaction that, when viewed objectively from BBH's standpoint that its inaction involved an extreme degree of risk. Nor can the Court reasonably infer that BBH proceeded with conscious indifference to the rights, safety, or welfare of anyone.

In this case, moreover, Plaintiff also alleges that the value of the Vanguard Fund increased to in excess of one million during the period that BBH acted as fiduciary and investment advisor. *See* Second Am. Compl. ¶ 4. Such an increase in the fund's value appears to cut against finding that BBH's inaction involved an extreme degree of risk. Regardless, based on the factual

allegations as a whole, while disregarding legal conclusions, the Court does not find that Plaintiff's facts rise to a level above mere speculation. Plaintiff has alleged insufficient facts to state a plausible claim of gross negligence under Texas law. Plaintiff's alleged facts do not nudge a conceivable claim to a plausible one.

Although the Court finds that Plaintiff has not stated a plausible claim of gross negligence, it does not base such finding on BBH's position that gross negligence requires extraordinary harm that is "akin to 'death, grievous physical injury or financial ruin," which are absent on Plaintiff's alleged facts. *See* Reply at 6-7. The Fifth Circuit has found such a purported financial-ruin requirement to be "a strained interpretation of [*Moriel*] at best." *U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 284 (5th Cir. 2001). As the Fifth Circuit has recognized, Texas law requires "extraordinary harm," of which death, physical injury, and financial ruin are relevant examples. *Id.* Financial harm can be extraordinary without requiring financial ruin. *See id.* But even when financial ruin is not required, Plaintiff's allegations do not provide enough facts to state a plausible gross negligence claim.

## IV. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). The circumstances of a case may warrant leave to amend even for represented parties. *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (per curiam). The Court exercises its discretion to permit Plaintiff to file a Third Amended Complaint to provide additional facts to support her claim of gross negligence.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS IN PART AND DENIES IN PART** *Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim* (ECF No. 14). It grants the motion to the extent Defendant seeks dismissal of Plaintiff's gross negligence claim, but such dismissal is without prejudice to Plaintiff filing a Third Amended Complaint **on or before March 12, 2020**, to re-allege that claim. The Court otherwise denies the motion and **DENIES** the *Motion to Convert Under Fed. R. Civ. P. 12(d)* and *Motion to Strike* contained within Plaintiff's response (ECF No. 16) to the motion to dismiss.

**SIGNED this 3rd day of March 2020.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**